**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Treadway Gallery, Inc.,           )
                                 )      Case No.: 1:19-cv-00664
      Plaintiff,          )
                                 )
   v.                         )
                                 )      Judge Michael R. Barrett
John Toomey Gallery, Inc., d/b/a  )
Toomey & Co. Auctioneers, et al.,  )
                                 )
                                 )
      Defendants.      )

## <u>OPINION AND ORDER</u>

This matter is before the Court on the partial Motion to Dismiss or for Summary Judgment filed by Defendants John Toomey Gallery, Inc. ("Toomey") and Thomas Vogel. (Doc. 21).[1] Plaintiff Treadway Gallery, Inc. filed a Response in Opposition (Doc. 24), and Defendants filed a Reply (Doc. 26). Following limited discovery regarding Defendant Vogel's employment status, and with the Court's permission, Plaintiff filed a Sur-Response (Doc. 35), and Vogel filed a Sur-Reply (Doc. 36).

## I.  <u>BACKGROUND</u>

Plaintiff is a company that acquires, consigns, and auctions high-end works of 20th Century art, decor, and furniture. (Doc. 35-1 Don Treadway[2] Aff. ¶ 3). Plaintiff operates a gallery and conducts auctions in Cincinnati, Ohio. (*Id.* ¶¶ 4, 9). Plaintiff has

---

[1] Defendants incorporate many arguments by reference to their previously filed Motion to Dismiss (Doc. 18) "[i]n the interest of brevity," "because their fundamental position [to certain arguments] is unchanged," and "to save the Court time and effort." (Doc. 21 PageID 151, 153 n.3). Defendants assert that such incorporation is proper. (*Id.* PageID 153 n.3). Assuming without deciding that such incorporation is proper, in future filings, it is not preferable.

[2] Mr. Treadway is the President of Plaintiff. (Doc. 35-1 Treadway Aff. ¶ 2).

developed a reputation as one of the preeminent auctioneers of 20th Century art and design in the United States. (*Id.* ¶ 6). Plaintiff sells its merchandise to customers in the United States and abroad. (*Id.* ¶ 8). To do so, Plaintiff publishes a print catalog and hosts a website with an online catalog, and, in both, publishes high-quality images of available merchandise. (Doc. 34-1 Thomas Vogel Dep. PageID 264-65); (Doc. 35-1 Treadway Aff. ¶ 11). Having high-quality photographs and resulting high-quality images of merchandise is a critical component of Plaintiff's success—and of one's success in the auction industry generally—due to the combination of the high value and unique nature of the items that Plaintiff sells, and the fact that Plaintiff's customers are often located away from Plaintiff's Cincinnati gallery and unable to attend auctions in-person. (Doc. 35-1 Treadway Aff. ¶¶ 11, 14).

Defendant Toomey is also in the business of acquiring, consigning, and auctioning high-end works of art, decor, and furniture. (Doc. 20 ¶ 1). Defendant Toomey operates a gallery in Chicago, Illinois. (Doc. 35-1 Treadway Aff. ¶ 24).

Plaintiff and Defendant Toomey conducted regular joint auctions under the name Treadway-Toomey Auctions ("TTA")[3] from 1987 to December 2017. (*Id.* ¶ 9). During the 30 years that Plaintiff and Defendant Toomey conducted regular TTA joint auctions, Plaintiff and Defendant Toomey each contributed resources to the joint auctions, but also maintained their individual corporate statuses and conducted business separate from the joint auctions. (*Id.* ¶ 10). Plaintiff and Defendant Toomey housed much of the merchandise for the TTA joint auctions in Defendant Toomey's Chicago gallery. (*Id.* ¶ 24).

---

[3] The joint auctions under the name TTA appear to be some kind of informal, unincorporated partnership between Plaintiff and Defendant Toomey, with no written agreement as to, inter alia, organization, profit sharing, or copyright, and no registration of TTA with a secretary of state. *See, e.g.*, (Doc. 20 ¶¶ 1, 37, 113).

Plaintiff and Defendant Toomey published print and online catalogs of merchandise offered by TTA, and, in doing so, relied on the use of high-quality photographs and images. (*Id.* ¶¶ 15, 23).

Defendant Vogel is a commercial photographer and digital imaging specialist who studied photography at the Ohio Visual Arts Institute and has over 40 years of photography experience. (Doc. 18 Thomas Vogel Aff. ¶¶ 2, 3). He began working for Plaintiff in June 2007 and ended his working relationship with Plaintiff in February 2018. (Doc. 34-1 Vogel Dep. PageID 296, 280-81, 313).

Although certain aspects of Plaintiff and Defendant Vogel's working relationship changed overtime, as discussed below, Vogel's primary job duties were always photographing the merchandise for Plaintiff's and the TTA joint auctions' print and online catalogs; pre-production preparation for the photo shoots for Plaintiff's and the TTA joint auctions' catalogs; post-production processing and editing to finalize the images for publication for Plaintiff's and the TTA joint auctions' catalogs; traveling to Defendant Toomey's Chicago gallery for the photo shoots for the TTA joint auctions' catalogs; transporting items for the TTA joint auctions back and forth between Plaintiff's Cincinnati gallery and Defendant Toomey's Chicago gallery; occasionally picking up merchandise for the TTA joint auctions on his drive from Cincinnati to Chicago; and keeping Plaintiff's photography equipment maintained and updated. (*Id.* PageID 252-53, 258).

At all times during his working relationship with Plaintiff, Defendant Vogel traveled to Chicago to do the photo shoots for the TTA joint auctions. He did so eight times a year, for four to six days each trip, and always traveled alone. (*Id.* PageID 254, 256). Defendant Vogel never drove his own vehicle to drive to Chicago; he either used Plaintiff's company

vehicle or rented a truck, and Plaintiff always carried and provided the insurance coverage. (*Id.* PageID 336-37). Similarly, Plaintiff always carried and provided the insurance coverage for the merchandise that Defendant Vogel had to transport back and forth between Plaintiff's gallery and Defendant Toomey's gallery or pick up on his drive from Cincinnati to Chicago. (*Id.* PageID 276-77, 336). While taking photographs for the TTA joint auctions in Chicago, Defendant Vogel rarely received instruction or direction, though, when direction was given, it was from John Toomey.[4] (*Id.* PageID 256-58). While taking photographs in Chicago, various employees or contractors of Defendant Toomey would sometimes assist Defendant Vogel with lifting heavier items or assembling items comprised of multiple parts. (*Id.* PageID 308-10).

At all times during Defendant Vogel's working relationship with Plaintiff, but on a small percentage of the total merchandise that Vogel photographed over the years, Mr. Treadway would ask Vogel for changes or adjustments to angles and colors on captured photographs and post-production images to ensure that the ultimate end-product image was one that Mr. Treadway deemed suitable to publish for the respective auction. (*Id.* PageID 258-60, 338-39); (Doc. 35-1 Treadway Aff. ¶ 22). Though, when Defendant Vogel first starting working for Plaintiff in 2007, Vogel did not have as much experience photographing vases and glassware—which comprise a significant portion of Plaintiff's merchandise—as Vogel had photographing furniture, so Mr. Treadway initially worked with Vogel on the methods and desired outcomes for photographing such items. (Doc. 35-1 Treadway Aff. ¶¶ 17-21).

---

[4] Mr. Toomey appears to be the President, or equivalent thereof, of Defendant Toomey.

At all times during the working relationship between Plaintiff and Defendant Vogel, it appears that the two parties never entered into a formal written employment agreement.

### a. Between 2007 and September 2014

From the time that Defendant Vogel began working for Plaintiff in 2007 and through September 2014, Vogel used Plaintiff's computer equipment to perform the post-production work discussed above, and did that post-production work at Plaintiff's gallery. (Doc. 34-1 Vogel Dep. PageID 263-65). Defendant Vogel would also assist with whatever was needed onsite during Plaintiff's auctions at its gallery in Cincinnati. (*Id.* PageID 311-12).

From the time that Defendant Vogel began working for Plaintiff in 2007 and through September 2014, Plaintiff paid Vogel hourly; Plaintiff paid, and Vogel received, overtime wages; Vogel filled out and submitted timesheets to Plaintiff; and Vogel received a paycheck every other week via an automatic deposit from Plaintiff. (Doc. 18-1 Vogel Aff. ¶ 12); (Doc. 34-1 Vogel Dep. PageID 268-69, 296-97, 335, 340). Defendant Vogel received IRS Form W-2s from Plaintiff. (Doc. 18-1 Vogel Aff. ¶ 7). Plaintiff gave Defendant Vogel a company credit card in his name that he used to maintain and repair equipment, and while traveling to and staying in Chicago for his work on the TTA joint auctions. (Doc. 34-1 Vogel Dep. PageID 260-61, 332-33). He specifically used the credit card for his hotel and food while in Chicago. (*Id.* PageID 332).

In September 2014, Mr. Treadway and Defendant Vogel began discussing a possible change in the terms of their working relationship. (*Id.* PageID 266-69). As part of their negotiations regarding their working relationship going forward, on September 24,

2014, Mr. Treadway emailed Defendant Vogel the following proposal for the terms of their

future working relationship:

> you receive a yearly salary of 50K, you pay all expenses...payment schedule is flexible, it can be weekly, monthly or whatever you choose...you would shoot items at the cincinnati warehouse on average of one day per week, doing the digital post production at home...if there isn't anything to shoot in the warehouse your presence isn't necessary...dave will shoot items when possible and dave, carrie, drew would assist in color correction when possible...chicago shoots would work as they do now except you will spend 36 days yearly on two shoots per sale...our current sale schedule will remain in place, all duties remaiin the same...**you pay any taxes and operate as a subcontractor**...your vacation days remain the same as to work around trips to chicago...your travel responsibilities will remain the same with occasional delivery and pick ups along the way...some trips to chicago may necessitate you to rent a van...we will try to be very efficient in terms of transporting items to and from chicago...all expenses of travel are your responsibilities...any existing photo equipment that belongs to treadway gallery remind their property, its yours to use at your discretion...the existing photo space remains for your use at your discretion...the location may change to another building at some point but for now it remains the same...equipment will remain the same, we pay for upgrades etc...you will use the same methods of replacing and repairing anything that goes awry...
>
> this agreement will be in force for a five year period beginning october 1, 2014...
>
> there are no hidden agendas, this is an attempt to make things easier for everyone and to give you more time to do personal things...there is no longer the expected 3 days per week attendance at the gallery in cincinnati...your time here is cut by 66% over the year, your time in chicago gallery is cut by 10%...**basically all remind the same except you are sub and pay the travel expenses**...
>

(Doc. 18 Vogel Aff. ¶ 9) (emphasis added).

### b. Between October 2014 and February 2018

Although some of the proposed terms found in Mr. Treadway's September 24,

2014, email materialized, some of the proposed terms did not. (Doc. 34-1 Vogel Dep.

PageID 271-74). For instance, after October 1, 2014, only Plaintiff did post-production

color correction; Defendant Vogel's time in Chicago on the TTA joint auctions did not decrease; and Plaintiff and Vogel's final agreement as to a new working relationship did not remain in force for five years. (*Id.*) However, after October 1, 2014, if Defendant Vogel was not on-site at Plaintiff's gallery, but had already set the lighting up and placed the camera in position, Dave Warren would occasionally place an item on the pre-arranged set up and take a photograph. (*Id.* PageID 272-73).

After October 1, 2014, Defendant Vogel continued to use Plaintiff's equipment, but Defendant Vogel was not physically in the gallery every day or on a regular basis. (*Id.* PageID 279, 289). Rather, Defendant Vogel's schedule onsite at Plaintiff's gallery was sporadic and depended on whether there were items at the gallery that needed to be photographed. (*Id.* PageID 289-90). Regarding the post-production work, Defendant Vogel almost always performed this work at home. (*Id.* PageID 290-91). Defendant Vogel also no longer assisted onsite during Plaintiff's auctions at its gallery. (*Id.* PageID 341).

Additionally, after October 1, 2014, Defendant Vogel stopped submitting timesheets and Plaintiff stopped paying Vogel hourly, overtime, and by automatic deposit. (Doc. 18-1 Vogel Aff. ¶¶ 12-13); (Doc. 34-1 Vogel Dep. PageID 335, 340-41). Instead, Defendant Vogel submitted invoices to Plaintiff every two weeks; Plaintiff's payment of the invoices was somewhat irregular, *i.e.*, not every two weeks; Vogel filed and paid his own taxes, including Social Security and Medicare; and Vogel received an IRS Form 1099-MISC from Plaintiff. (Doc. 18-1 Vogel Aff. ¶¶ 13-19, PageID 101-08); (Doc. 34-1 Vogel Dep. PageID 273, 297-99, 306). For the 2014 tax year, Defendant Vogel received both an IRS form W-2 and an IRS Form 1099-MISC from Plaintiff. (Doc. 18-1 Vogel Aff.

¶ 16 PageID 106). For the 2015 through 2017 tax years, Defendant Vogel received only an IRS Form 1099-MISC from Plaintiff. (*Id.* ¶¶ 17-19).

Defendant Vogel returned Plaintiff's company credit card by October 1, 2014, and, on a handful of occasions thereafter, had to get permission from someone at Plaintiff to purchase items for his work for Plaintiff. (Doc. 34-1 Vogel Dep. PageID 333). After October 1, 2014, Defendant Vogel paid for his gas, hotel, and food while traveling to and staying in Chicago for his work on the TTA joint auctions. (Doc. 18-1 Vogel Aff. ¶ 11); (Doc. 34-1 Vogel Dep. PageID 334).

Also after October 1, 2014, Defendant Vogel occasionally performed photography services for other clients. (Doc. 34-1 Vogel Dep. PageID 270-71, 296).

Pertinent to this lawsuit, and in addition to the other photographs taken during Plaintiff and Defendant Vogel's working relationship, Defendant Vogel took groups of photographs of merchandise to be included in TTA joint auctions in 2016 and 2017. (Doc. 20 ¶ 26). With respect to those photographs from 2016, Plaintiff published 638 photographs between June 4, 2016, and December 3, 2016, on its website. (*Id.* ¶ 28). On June 5, 2019, Plaintiff filed a U.S. Copyright application for the collection of these photographs first published in 2016, and that application has been registered in Plaintiff's name as U.S. Copyright Registration Number VA0002153317 / 2019-06-05. (*Id.* ¶¶ 30, 32); (Doc. 20-1 PageID 141-43) (Plaintiff's certificate of copyright registration for the photographs taken in 2016). With respect to those photographs from 2017, Plaintiff published 435 photographs between March 4, 2017, and December 2, 2017, on its website. (Doc. 20 ¶ 29). On June 5, 2019, Plaintiff filed a U.S. Copyright application for the collection of these photographs first published in 2017, and that application has been

registered in Plaintiff's name as U.S. Copyright Registration Number VA0002153696 / 2019-06-05. (*Id.* ¶¶ 31, 33); (Doc. 20-2 PageID 145-47) (Plaintiff's certificate of copyright registration for the photographs taken in 2017).

In December 2017, Plaintiff and Defendant Toomey stopped conducting TTA auctions and appear to have ceased any and all business dealings with one another. (Doc. 35-1 Treadway Aff. ¶ 9); *see* (Doc. 20 ¶ 34). Consequently, as of December 2017, Defendant Vogel stopped taking photographs for the TTA joint auctions. Shortly thereafter, on February 9, 2018, Defendant Vogel stopped working for Plaintiff entirely. (Doc. 34-1 Vogel Dep. PageID 280-81, 313). Defendant Vogel, starting in at least mid-February 2018, performed photography work for Defendant Toomey. (*Id.* PageID 322-26).

### c. Current lawsuit

Plaintiff filed its initial Complaint in this matter in August 2019 (Doc. 1), and filed a timely Amended Complaint in December 2019 (Doc. 20); *see* FED. R. CIV. P. 15(a)(1)(B). The Amended Complaint includes claims against Defendant Toomey for copyright infringement, civil conspiracy, conversion, civil theft, unjust enrichment, fraud, and tortious interference with business relations. (Doc. 20). The Amended Complaint includes claims against Defendant Vogel for copyright infringement, civil conspiracy, and a violation of the faithless servant doctrine. (*Id.*) The partial Motion to Dismiss or for Summary Judgment currently before the Court deals only with Plaintiff's claims for copyright infringement, civil conspiracy, and a violation of the faithless servant doctrine. (Doc. 21).

Plaintiff's copyright infringement claims center on the two U.S. Copyright Registrations noted above and Defendants' alleged copying, displaying, and using the

photographs at issue on Defendant Toomey's website. (Doc. 20 ¶¶ 60-68). Plaintiff's civil conspiracy claims center on the two noted U.S. Copyright Registrations and Defendant Vogel's work for Defendant Toomey after December 2017. (*Id.* ¶¶ 69-76). Plaintiff's claim for a violation of the faithless servant doctrine centers on Defendant Vogel's work for Defendant Toomey after December 2017 and Vogel's alleged work for Toomey before December 2017. (*Id.* ¶¶ 109-117).

## II.  ANALYSIS

### a.  Standard of Review

The Court will analyze Defendants' partial Motion to Dismiss or for Summary Judgment as a motion for summary judgment under Federal Rule of Civil Procedure 56 in light the parties' reliance on matters outside of the pleadings, participation in limited discovery, and submission of supplemental briefing. *See* FED. R. CIV. P. 12(d);[5] *see also Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) (explaining that a district court has complete discretion to decide whether to consider materials beyond the pleadings and treat a 12(b)(6) motion to dismiss as one for summary judgment under Rule 56); *compare* (Docs. 18, 21, 26, 36), *with* (Docs. 24, 35).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

---

[5] "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).

477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.* On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. Additionally, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

### b. Faithless Servant Doctrine and Copyright Infringement Claims[6]

Plaintiff's success on its claims for a violation of the faithless servant doctrine and copyright infringement depends on Defendant Vogel's employment status during 2016 and 2017, *i.e.*, during the time that Vogel took the photographs at issue. *Compare* (Doc. 24 PageID 176), *and* (Doc. 35 PageID 424), *with* (Doc. 18 PageID 77). If Defendant Vogel was Plaintiff's employee in 2016 and 2017, then Plaintiff owns the copyright in the photographs at issue as works made for hire, and Plaintiff may proceed on its copyright infringement claims and faithless servant claim against its former employee. If Defendant Vogel was not Plaintiff's employee in 2016 and 2017, then Plaintiff does not own the copyright in the photographs at issue, does not have standing to sue for infringement, and does not have standing to bring a faithless servant claim against a non-employee.

---

[6] For ease of organization, the Court addresses Plaintiff's claims out of the order found in the Amended Complaint.

Starting with Plaintiff's claim for a violation of the faithless servant doctrine, in Ohio, the faithless servant doctrine provides that:

> [d]ishonesty and disloyalty on the part of an employee which permeates his service to his employer will deprive him of his *entire agreed compensation*, due to the failure of such an employee to give the stipulated consideration for the agreed compensation. Further, as public policy mandates, an employee cannot be compensated for his own deceit or wrongdoing. However, an employee's compensation will be denied only during his period of faithlessness.

*Roberto v. Brown Cty. Gen. Hosp.*, 59 Ohio App. 3d 84, 86, 571 N.E.2d 467, 469 (1989) (emphasis in original). Stated differently, if an employee was dishonest and disloyal to his employer, and that dishonesty and disloyalty "permeated" the employee's service, then the employer may recover compensation paid to the employee during the relevant period. *Cheryl & Co. v. Krueger*, 536 F. Supp. 3d 182, 212 (S.D. Ohio 2021) (citing *Roberto*, 571 N.E.2d at 469). The "doctrine applies when a party is disloyal to his employer." *Joseph v. Joseph*, No. 1:16-CV-465, 2018 WL 488195, at *9 (S.D. Ohio Jan. 19, 2018) (emphasis omitted) (citing *Roberto*, 571 N.E.2d at 467).

Turning to Plaintiff's copyright infringement claims, to prevail under a copyright infringement claim, a plaintiff must establish that (1) he owned a valid copyright, and (2) the defendant "copied protectable elements of the work." *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 476 (6th Cir. 2015) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004)), *aff'd sub nom. Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 197 L. Ed. 2d 354 (2017).

Regarding the first element of a copyright infringement claim, the Copyright Act provides that copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). "As a general rule, the author is the party who actually creates the

work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (citing 17 U.S.C. § 102). The Copyright Act, however, includes an exception to the general rule for ownership for "works made for hire." *Id.*; *see* 17 U.S.C. § 201(b). Under this exception, if the work is made for hire, then the employer for whom the work was prepared is considered the author and owns the copyright, unless there is a signed written agreement to the contrary. *Reid*, 490 U.S. at 737 (quotation marks omitted) (quoting 17 U.S.C. § 201(b)). Under the Copyright Act, a work is "for hire" if the work is

> (1) prepared by an employee within the scope of his employment; or
>
> (2) specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

*Id.* at 738 (quoting 17 U.S.C. § 101).

The Copyright Act does not define the terms "employee" or "scope of employment." Rather, the term "employee," as used in 17 U.S.C. § 101(1), is understood through application of the general common law of agency. *Hi-Tech Video Prods., Inc. v. Cap. Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995) (citing *Reid*, 490 U.S. at 740-41). Courts are to consider a number of factors when determining whether someone is an employee and thus whether a work was produced for hire by an employee or by an independent contractor. *Reid*, 490 U.S. at 751-52; *Hi-Tech Video Prods., Inc.*, 58 F.3d at 1095-96; *Kennedy v. Gish, Sherwood & Friends, Inc.*, 143 F. Supp. 3d 898, 906 (E.D. Mo. 2015).

The nonexclusive list of factors relevant to the determination of employee status includes:

> (1) the hiring party's right to control the manner and means by which the product is accomplished;
>
> (2) the skill required;
>
> (3) the source of the instrumentalities and tools;
>
> (4) the location of the work;
>
> (5) the duration of the relationship between the parties;
>
> (6) whether the hiring party has the right to assign additional projects to the hired party;
>
> (7) the extent of the hired party's discretion over when and how long to work;
>
> (8) the method of payment;
>
> (9) the hired party's role in hiring and paying assistants;
>
> (10) whether the work is part of the regular business of the hiring party;
>
> (11) whether the hiring party is in business;
>
> (12) the provision of employee benefits; and
>
> (13) the tax treatment of the hired party.

*Hi-Tech Video Prods., Inc.*, 58 F.3d at 1096 (citing *Reid*, 490 U.S. at 751-52). "No single factor is determinative." *Id.* (citing *Reid*, 490 U.S. at 751-52). And "[i]t does not necessarily follow that because no one factor is dispositive all factors are equally important, or [ ] that all factors will have relevance in every case. The factors should not merely be tallied but should be weighed according to their significance in the case." *Id.* (quoting *Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992)).

Although questions of historical fact relevant to applying each factor are for the finder of fact, the ultimate determination, on settled facts, of whether work qualifies as a work for hire is a question of law. *Langman Fabrics, a div. of Blocks Fashion Fabrics, Inc. v. Graff Californiawear, Inc.*, 160 F.3d 106, 111 (2d Cir. 1998) (citing *Aymes*, 980 F.2d at 861), *amended*, 169 F.3d 782 (2d Cir. 1998); *accord Kennedy*, 143 F. Supp. 3d at 906; *Clancy v. Jack Ryan Enterprises, Ltd.*, No. CV ELH-17-3371, 2021 WL 488683, at *25 (D. Md. Feb. 10, 2021).

Here, the material facts are settled. As neither party argues that the photographs at issue were specially ordered or commissioned or that Plaintiff and Defendant Vogel signed a written instrument stating that the photographs were to be considered works made for hire, *see* 17 U.S.C. § 101(2), the Court will weigh the relevant factors to determine whether Vogel was Plaintiff's employee who took the photographs within the scope of his employment in 2016 and 2017, or was an independent contractor, *see id.* § 101(1). The Court notes that Plaintiff is entitled to a statutory presumption of the validity of the facts stated in its Copyright Registrations. *See id.* § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."); *BancTraining Video Sys. v. First Am. Corp.*, 956 F.2d 268 (6th Cir. 1992) (per curiam) ("The filing of a certificate of registration creates a rebuttable presumption of the validity of a copyright and of the facts contained in the certificate regarding ownership."); *Langman Fabrics, a div. of Blocks Fashion Fabrics, Inc.*, 160 F.3d at 111. Plaintiff's certificates of registration state that Plaintiff was the author of photographs at issue by virtue of the work for hire rule. (Doc. 20-1 PageID 141-43)

(Plaintiff's certificate of copyright registration labeling the 2016 group of photographs as "[w]ork made for hire"); (Doc. 20-2 PageID 145-47) (same for the photographs taken in 2017); *see Langman Fabrics, a div. of Blocks Fashion Fabrics, Inc.*, 160 F.3d at 111. Consequently, it is Defendants' burden to rebut this presumption and establish that Plaintiff was not the author of the photographs by virtue of the work for hire rule. *See Hi-Tech Video Prods., Inc.*, 58 F.3d at 1095.

### i. The hiring party's right to control the manner and means by which the product is accomplished

Plaintiff and Defendant Toomey supplied the merchandise that constituted the subjects of the groups of photographs taken in 2016 and 2017. (Doc. 35-1 Treadway Aff. ¶ 10). Defendant Vogel rarely received instruction or direction, though, when direction was given while he taking photographs for the TTA joint auctions in Chicago, the direction came from Mr. Toomey. (Doc. 34-1 Vogel Dep. PageID 256-58). Similarly, while taking photographs for Plaintiff, Mr. Treadway sometimes directed Defendant Vogel's work to ensure that Plaintiff produced images that Mr. Treadway deemed suitable to publish, but Mr. Treadway gave such direction on a small percentage of the images that Vogel produced. (*Id.* PageID 258-60, 338-39); (Doc. 35-1 Treadway Aff. ¶ 22). Mr. Treadway's initial direction to Defendant Vogel in 2007, regarding Mr. Treadway's desired methods and desired outcomes for photographing vases and glassware (Doc. 35-1 Treadway Aff. ¶ 21), does not convince the Court that Mr. Treadway controlled the manner and means by which Vogel photographed vases and glassware in 2016 and 2017. And, although Mr. Treadway appears to have retained ultimate say in what he deemed suitable to publish in Plaintiff's and the TTA joint auctions' catalogs, he relied on Defendant Vogel's skill in photography and post-production processing and editing to publish the final images in

those catalogs. *See Hi-Tech Video Prods.*, Inc., 58 F.3d at 1097. Defendant Vogel controlled "the choice of light sources, filters, lenses, camera, film, perspective, aperture setting, shutter speed, and processing techniques." *Marco v. Accent Pub. Co.*, 969 F.2d 1547, 1551–52 (3d Cir. 1992), *abrogated on other grounds by TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019); *accord* (Doc. 34-1 Vogel Dep. PageID 275).

Mr. Treadway's review of the photographs and resulting post-production images to ensure that Defendant Vogel achieved the ultimate result that Mr. Treadway desired weighs in favor of finding an employer-employee relationship, but it is not nearly as significant as Plaintiff urges in light of the photography and digital imaging skill required by Vogel. *See Hi-Tech Video Prods.*, Inc., 58 F.3d at 1097. Additionally, "the extent of control the hiring party exercises over the details of the product is not dispositive," particularly when, as here, "other circumstances weigh heavily against finding an employment relationship." *Reid*, 490 U.S. at 752.

### ii. The skill required

Defendant Vogel is a commercial photographer and digital imaging specialist with over 40 years of experience. (Doc. 18 Vogel Aff. ¶¶ 2, 3). He worked for Plaintiff, which has a reputation as one of the preeminent auctioneers of 20th Century art and design in the United States, for a little over 11 years. (Doc. 35-1 Treadway Aff. ¶ 6). The type of photography and post-production skill required to create the final images used by a preeminent art auction house necessitates technical photography skills beyond that of an average person with access to a camera. The Court finds that Defendant Vogel is skilled, and this factor strongly weighs in his favor. *See Horror Inc. v. Miller*, 15 F.4th 232, 251 (2d Cir. 2021) ("Courts adjudicating copyright cases involving professional creative artists

17

have typically found the skill factor to weigh strongly in favor of independent contractor status.").

### iii. The source of the instrumentalities and tools

Although Defendant Vogel had his own photography equipment and computer, he used Plaintiff's photography equipment to take the photographs and Plaintiff's computer do the post-production work. (Doc. 34-1 Vogel Dep. PageID 260-61, 263-64, 277-81, 295-96). Additionally, when Defendant Vogel traveled to Chicago, often transporting merchandise for the TTA joint auctions, he used Plaintiff's company vehicle or rented a truck, and Plaintiff always carried and provided the insurance coverage for both the vehicle used and merchandise. (*Id.* PageID 276-77, 336-37). This factor indicates employee status.

### iv. The location of the work

Defendant Vogel photographed merchandise at Plaintiff's gallery and Defendant Toomey's gallery. When working on Plaintiff's auctions, Defendant Vogel was not physically in Plaintiff's gallery every day or even on a regular basis. (*Id.* PageID 279, 289). Rather, Defendant Vogel's onsite schedule at Plaintiff's gallery depended on whether there were items there that needed to be photographed. (*Id.* PageID 289-90). When shooting for the TTA joint auctions, Defendant Vogel was in Chicago at Defendant Toomey's gallery. Regardless of whether he was working on photographs for Plaintiff or the TTA joint auctions, Defendant Vogel almost always performed the post-production editing work at home. (*Id.* PageID 290-91). This factor is neutral, and the Court will not weigh it.

### v.   The duration of the relationship between the parties

Defendant Vogel worked for Plaintiff from 2007 to February 2018, and he was available to Plaintiff "24/7" before they ended their working relationship in February 2018. (*Id.* PageID 295). The length of the time that Defendant Vogel worked with Plaintiff, and his broad general availability, provides evidence of an employment relationship. *See Marco*, 969 F.2d at 1551.

### vi.   Whether the hiring party has the right to assign additional projects to the hired party

After October 1, 2014, Defendant Vogel performed work for Plaintiff in addition to the pre-production preparation, photo shoots, and post-production editing for Plaintiff's and the TTA joint auctions' catalogs. *See Alcatel USA, Inc. v. Cisco Sys., Inc.*, 239 F. Supp. 2d 645, 655 (E.D. Tex. 2002) (citing *Hi-Tech Video Prods., Inc.*, 58 F.3d at 1096) (explaining that, in examining this factor, courts should consider whether the hiring party has the right to assign projects in addition to the project of creating the copyrighted works themselves, and should not consider whether the hiring party has a general right to assign to the hired party various projects that relate to the completion of the assigned task). Specifically, Defendant Vogel transported items for the TTA joint auctions back and forth between Cincinnati and Chicago, occasionally picked up merchandise for the joint auctions on the drive from Cincinnati to Chicago, and kept Plaintiff's photography equipment maintained and updated. (Doc. 34-1 Vogel Dep. PageID 252-53, 258). Defendant Vogel was available to Plaintiff "24/7." (*Id.* PageID 295). However, nothing in the record suggests that Defendant Vogel had to accept any assignments unrelated to the photo shoots of Plaintiff's and the TTA joint auctions' merchandise and subsequent editing. *See Alcatel USA, Inc.*, 239 F. Supp. 2d at 655. For example, while Plaintiff

assisted onsite with the auctions at Plaintiff's Cincinnati gallery before October 1, 2014, he did not continue such assistance after that date. (Doc. 34-1 Vogel Dep. PageID  341). Further, after October 1, 2014, Defendant Vogel occasionally performed photography services for other clients. (*Id.* PageID 270-71, 296). On the whole, this factor is neutral, and the Court will not weigh it.

### vii.  The extent of the hired party's discretion over when and how long to work

Plaintiff controlled when the merchandise in the Cincinnati gallery and Defendant Toomey's Chicago gallery was present and thus when Defendant Vogel needed to be onsite at both locations for photo shoots. Plaintiff also set the general deadlines to publish the catalogs and thus when Defendant Vogel needed to submit the final high-quality images. However, in terms of post-production work, and outside of meeting the general deadlines, Defendant Vogel had freedom in scheduling when he actually did the post-production work at home. Plaintiff's control over the general deadlines suggests an employment relationship whereas Defendant Vogel's control over his day-to-day schedule when not onsite suggests an independent contractor relationship. This factor is neutral, and the Court will not weigh it.

### viii.  The provision of employee benefits, the method of payment, and the tax treatment of the hired party[7]

In 2016 and 2017, Defendant Vogel submitted invoices to Plaintiff, and Plaintiff's payment to Vogel was dependent on receipt of an invoice, irregular, and not via automatic payment as it had been in the past. (Doc. 18-1 Vogel Aff. ¶¶ 13-19, PageID 101-08); (Doc. 34-1 Vogel Dep. PageID 273, 297-99, 306). For tax year 2016, Plaintiff paid

---

[7] For ease of organization, the Court addresses the *Reid* factors out of the order found in *Reid*.

Defendant Vogel a total of $44,231.00. (Doc. 18 Vogel Aff. ¶ 18, PageID 107). For tax year 2017, Plaintiff paid Defendant Vogel a total of $48,577.00 (*Id.* ¶ 19, PageID 108).

Plaintiff did not provide health insurance to Defendant Vogel. (Doc. 35-1 Treadway Aff. ¶ 28). Plaintiff did not pay payroll or Social Security taxes, or contribute to unemployment insurance or workers' compensation funds on Defendant Vogel's behalf. *See Reid*, 490 U.S. at 753. Defendant Vogel paid his own taxes and received an IRS Form 1099-MISC from Plaintiff. (Doc. 18-1 Vogel Aff. ¶¶ 13-19, PageID 101-08); (Doc. 34-1 Vogel Dep. PageID 273, 297-99, 306).

Plaintiff actively changed how it treated Defendant Vogel when it switched from treating Vogel as an employee to treating Vogel as an independent contractor for payment and tax purposes in October 2014—a change taken to advantage Plaintiff. *See Alcatel USA, Inc.*, 239 F. Supp. 2d at 656. Now, when it is has become advantageous for Plaintiff to treat Defendant Vogel as an employee, to assert ownership of the photographs at issue, Plaintiff declared such ownership on the copyright registrations it submitted in June 2019. *See id.* Plaintiff's current assertion that Defendant Vogel was an employee in 2016 and 2017 is completely antithetical to its prior treatment of Vogel for payment and tax purposes during those same years. *See id.*; *see also Horror Inc.*, 15 F.4th at 251 (holding that the plaintiff "[c]ompanies cannot have it both ways" by benefitting from the defendant's status as an independent contractor in the benefits and taxation contexts and then subsequently deny the defendant independent contractor status in the copyright context); *Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1009 (N.D. Ill. 2000) ("[Defendant] may not obtain the benefits associated with hiring an independent contractor and, at the same time, enjoy the advantages of treating that person as an employee; it must choose.").

"[T]he choice to treat a skilled worker as an independent contractor for compensation and tax purposes [i]s entirely inconsistent with an employer-employee relationship." *Hi-Tech Video Prods.*, Inc., 58 F.3d at 1097 (quoting *Aymes*, 980 F.2d at 857). These factors weigh heavily in favor of finding independent contractor status.[8] *See id.*

### ix.  The hired party's role in hiring and paying assistants

While shooting merchandise in Chicago for the TTA joint auctions, various employees or contractors of Defendant Toomey would sometimes assist Defendant Vogel with lifting or assembling items. (Doc. 34-1 Vogel Dep. PageID 308-10). Defendant Toomey had total discretion in hiring and paying these assistants. (*Id.* PageID 310). Other than when he was in Chicago, Defendant Vogel did not have or use his own or someone else's assistants. (*Id.*) The Court finds this factor irrelevant, and will not consider it. *Cf. Aymes*, 980 F.2d at 861 ("[T]he factors relating to the authority to hire assistants will not normally be relevant if the very nature of the work requires the hired party to work alone.").

### x.  Whether the hiring party is in business

Plaintiff is in business "which is often consistent with having employee workers." *Horror Inc.*, 15 F.4th at 256. This factor, though, has very little weight in the *Reid* analysis, and weighs only marginally in Plaintiff's favor. *See id.* (citing *Aymes*, 980 F.2d at 863).

---

[8] The parties dispute whether Plaintiff provided Defendant Vogel with paid vacation in 2016 and 2017. *Compare* (Doc. 35-1 Treadway Aff. ¶ 29), *with* (Doc. 34-1 Vogel Dep. PageID 273, 314-15). Even assuming without deciding that Plaintiff provided Defendant Vogel with paid vacation in 2016 and 2017, such that Plaintiff permitted Vogel to invoice Plaintiff for time spent while on vacation, this would not change the Court's conclusion with respect to these factors.

### xi. Whether the work is part of the regular business of the hiring party

Plaintiff is in the business of acquiring, consigning, and auctioning high-end art (Doc. 35-1 Treadway Aff. ¶ 3), whereas Defendant Vogel is in the business of photography (Doc. 18-1 Vogel Aff. ¶ 2). As part of Plaintiff's business, it regularly uses photographs and images in connection with the catalogs for its auctions and the TTA joint auctions. (Doc. 35-1 Treadway Aff. ¶¶ 11, 15). Plaintiff could effectively accomplish its publication of the catalogs for itself and the TTA joint auctions through independent contractors instead of employees. This factor carries indeterminate weight, and the Court will disregard it.

### xii. Perception of the parties

"In applying the common law of agency to copyright cases, the Supreme Court typically refers to the Restatement of Agency for guidance." *Hi-Tech Video Prods., Inc.*, 58 F.3d at 1097 (citing *Reid*, 490 U.S. at 752 n.31). In addition to the *Reid* factors, "the Restatement cites the parties' perceptions or understanding as relevant to a worker's employment status." *Id.* (citing RESTATEMENT (SECOND) OF AGENCY § 220(2)(i) (1957)). Mr. Treadway, as part of Plaintiff's and Defendant Vogel's negotiations regarding the parameters of their working relationship going forward, suggested that, as of October 2014, Vogel would "pay any taxes and operate as a subcontractor" and that "basically all rem[ains] the same except you are a sub and pay the travel expenses." (Doc. 18 Vogel Aff. ¶ 9). Defendant Vogel considered himself an independent contractor as of October 2014. (Doc. 34-1 Vogel Dep. PageID 286). The Court considers Mr. Treadway's and Defendant Vogel's perception of Vogel as a subcontractor and an

independent contractor as of October 2014, to be indicative of Vogel's independent contractor status after that date. *See Hi-Tech Video Prods., Inc.*, 58 F.3d at 1098.

### xiii.  Summary

Mr. Treadway's ultimate say in what images he deemed suitable to publish in Plaintiff's and the TTA joint auctions' print and online catalogs, Defendant Vogel's use of Plaintiff's equipment, and Vogel's broad general availability to Plaintiff suggest, at first blush, that Vogel was Plaintiff's employee. *See Hi-Tech Video Prods., Inc.*, 58 F.3d at 1099. However, the skill required of Defendant Vogel, Plaintiff's economic treatment of Vogel, and the parties' perceptions of Vogel's employment status in 2016 and 2017, combine to compel the conclusion that Vogel was an independent contractor when he took the photographs at issue. *See id.* Examining the circumstances of this case in light of the *Reid* factors and the parties' perceptions, in 2016 and 2017, Defendant Vogel was not Plaintiff's employee and was an independent contractor. Defendants have rebutted the presumption that Plaintiff's copyright for the 2016 and 2017 photographs are valid "works made for hire." Stated otherwise, the 2016 and 2017 groups of photographs at issue were taken by an independent contractor and thus are not "works made for hire," and Plaintiff's copyright in the 2016 and 2017 groups of photographs as "works made for hire" are invalid.[9] Plaintiff therefore lacks standing to bring his copyright infringement and faithless servant claims, and these claims fail as a matter of law. *See Varsity Brands, Inc.*, 799 F.3d at 476; *Joseph*, 2018 WL 488195, at *9-10. Summary judgment in Defendants' favor on these claims is proper.

---

[9] As the Court finds that Plaintiff cannot establish that it owns a valid copyright, the Court need not discuss whether Defendants "copied protectable elements of the work." *Varsity Brands, Inc.*, 799 F.3d at 476.

### c. **Civil Conspiracy Claim**

Plaintiff alleges that Defendant Toomey and Defendant Vogel knew that Plaintiff owned the copyright in the 2016 and 2017 groups of photographs at issue. (Doc. 20 ¶ 38). Plaintiff alleges that Defendant Toomey and Defendant Vogel also knew of Plaintiff's and Defendant Toomey's alleged agreement, made around December 2017 upon the ending of the TTA joint auctions, that Toomey would not hire any of Plaintiff's employees without first obtaining Plaintiff's approval. (*Id.* ¶ 39). Plaintiff alleges that Defendants "combined their efforts to willfully and maliciously infringe [Plaintiff]'s copyrights in the photographs and violate the agreement between" Plaintiff and Defendant Toomey regarding hiring Plaintiff's employees after December 2017. (*Id.* ¶ 73). Plaintiff alleges that Defendants' "conduct amounts to a conspiracy under Ohio law in that it infringed [Plaintiff]'s copyrights, interfered with [Plaintiff]'s business, and resulted in Vogel's violations of his duties as an employee." (*Id.* ¶ 74). However, these claims fail as Plaintiff does not own the copyright at issue and Defendant Vogel was not Plaintiff's employee in or after 2017.

### III. **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that Defendants' partial Motion to Dismiss or for Summary Judgment (Doc. 21) is **GRANTED**.

**IT IS SO ORDERED.**

 /s Michael R. Barrett
Michael R. Barrett, Judge
United States District Court